Nabiha ABU–ZEINEH, as Administratrix of the Estate of Mohammad Abu–Zeineh, Yousra Abu–Karish, Mahmoud El–Attar, as Administrator of the Estate of Bahiyeh El–Attar, Nuwarah Mash'al, as Administratrix of the Estate of Mohammad Mash'al, Abdullah Gurab, as Administrator of the Estate of Asmah Gurab, Jihad Abu–Ramouz, as Administratrix of the Estate of Rushdi Abu–Ra-

mouz, Abed Safi, as Administrator of the Estate of Aysha Safi, Ahmad Essawi, as Administrator of the Estate of Fatima Essawi, and Nofan El–Khader, as Administrator of the Estate of Fatima El–Ara'ash, Plaintiffs,

v.

### FEDERAL LABORATORIES, INC. and Transtechnology Corporation, Defendants.

Civ. A. No. 91–2148.

United States District Court, W.D. Pennsylvania.

Dec. 7, 1994.

---

Beth Stephens, Center for Constitutional Rights, New York City, Abdeen Jabara, Mancelona, MI, Judith Brown Chomsky, Philadelphia, PA, Joseph S. Hornack, Healey, Davidson & Hornack, Pittsburgh, PA, for Plaintiffs.

Carolyn M. Branthoover, Michael P. Routch, Theresa J. Colecchia, David L. McClenahan, Robert J. Waine, Kirkpatrick & Lockhart, Pittsburgh, PA, Patrick J. O'Connor, Douglas B. Lang, Cozen & O'Connor, Philadelphia, PA, for Defendants.

## MEMORANDUM

STANDISH, District Judge.

### I

This is a wrongful death action in which plaintiffs allege that their decedents died as a result of exposure to a chemical weapon, commonly referred to as CS gas, used by the Israeli military in the occupied territories of the West Bank and the Gaza Strip or in the area around Jerusalem. Plaintiffs seek damages from defendants, alleging that defective CS gas was manufactured and negligently sold by defendants to the Israeli government.

Defendants have moved to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ. P. 12(b)(1).[1] In the alternative, defendants have moved to dismiss the amended complaint on the grounds of forum *non conveniens*. For the reasons set forth below, defendants' motion to dismiss for lack of subject matter jurisdiction will be granted.

### II

Plaintiffs purport to invoke this court's jurisdiction pursuant to Title 28, United States Code, Section 1332(a)(2), which provides:

**§ 1332. Diversity of citizenship; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum

1. Plaintiffs filed a proposed amended complaint on May 28, 1992. The amended complaint adds Nofan El–Khader, who is the administrator of the estate of Fatima El–Ara'ash, as an additional plaintiff.

or value of $50,000.00, exclusive of interest and costs, and is between—

\* \* \* \* \* \*

**(2)** citizens of a State and *citizens or subjects of a foreign state;* (emphasis added)

\* \* \* \* \* \*

28 U.S.C. § 1332(a)(2).[2]

For purposes of diversity jurisdiction, defendant Federal Laboratories, Inc. has a principal place of business in Saltsburg, Pennsylvania, and defendant TransTechnology Corporation is a Delaware corporation with a principal place of business in Union, New Jersey. Plaintiffs Yousra Abu–Karish, Mahmoud El–Attar and Abdullah Gurab allege that they are citizens of Palestine, and the remaining six plaintiffs allege that they are citizens of Palestine *and* Jordan.[3]

After considering the materials submitted in support of, and in opposition to, defendants' motion to dismiss for lack of subject matter jurisdiction, the court concluded that the opinion of the United States Department of State should be solicited concerning two questions which are relevant to this court's jurisdiction in the above-captioned civil action.[4] The first question related to the allegation of Palestinian citizenship, and the second question related to the allegation of Jordanian citizenship.

Pursuant to this court's memorandum and order dated December 14, 1993, plaintiffs' counsel wrote to the State Department, requesting an opinion as to the two questions framed by the court concerning the allegations of Palestinian and Jordanian citizenship. By letter dated December 4, 1994,

counsel for defendants notified the court that the State Department had responded to plaintiffs' request by letter dated November 21, 1994. The State Department's response to each question will be discussed separately.

III

*Palestinian Citizenship*

■ It is clear that to fall within the grant of jurisdiction set forth in Title 28, United States Code, Section 1332(a)(2), a civil action must be between citizens of a State and citizens or subjects of a foreign state. Moreover, the foreign state must be recognized by the Executive Branch of the United States government at the time the complaint is filed.[5] The recognition may be *de jure* or *de facto.*

■ *De Jure* recognition is formal recognition. In the present case, plaintiffs concede that the Executive Branch of the United States government did not formally recognize Palestine at the time their complaint was filed on December 19, 1991. Therefore, plaintiffs cannot rely on *de jure* recognition of Palestine by the Executive Branch to support the assertion of Palestinian citizenship.

■ Turning to *de facto* recognition, such recognition can be accorded a foreign state based upon an objective examination of the relations between the recognized entity and the recognizing state. In connection with de facto recognition of Palestine, the opinion of the State Department was solicited with respect to the following question:

1. Whether the Executive Branch of the United States government accorded *de facto* recognition to Palestine on December

2. This type of jurisdiction is often referred to as "alienage jurisdiction." *See Sadat v. Mertes,* 615 F.2d 1176, 1182 (7th Cir.1980).

3. For purposes of diversity jurisdiction, the legal representative of the estate of a decedent is deemed to be a citizen only of the same State as the decedent. See 28 U.S.C. § 1332(c)(2).

4. In several cases cited in the parties' memorandums, the views of the State Department were solicited with respect to the status of certain foreign states which were not formally recognized by the United States government and with respect to the propriety of suits brought by resi-

dents of those foreign states in federal court. *See e.g., Iran Handicraft & Carpet Export Center v. Marjan Int'l Corp.,* 655 F.Supp. 1275, 1280 (S.D.N.Y.1987); *Transportes Aereos De Angola v. Ronair, Inc.,* 544 F.Supp. 858, 861 (D.Del.1982); *Chang v. Northwestern Memorial Hosp.,* 506 F.Supp. 975, 978 (N.D.Ill.1980); and *Murarka v. Bachrack Bros.,* 215 F.2d 547, 552 (2d Cir.1954).

5. It is well established that diversity of citizenship is assessed at the time the action is filed. *See, e.g., Freeport–McMoRan Inc. v. K N Energy, Inc.,* 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991).

19, 1991, the date of the filing of the complaint in the above-captioned civil action, based on its relations with Palestine such that this diversity suit should proceed in federal court?

The State Department responded to the question as follows:

Answer: The Executive Branch did not accord "Palestine" *de facto* recognition on December 19, 1991.

In light of the State Department's response to this question, it is clear that plaintiffs cannot rely on Palestinian citizenship in support of diversity jurisdiction under Title 28, United States Code, Section 1332(a)(2). Because plaintiffs Yousra Abu–Karish, Mahmoud El–Attar and Abdullah Gurab allege only Palestinian citizenship, the State Department's answer to the court's first question is dispositive as to these plaintiffs.

*Jordanian Citizenship*

■ With respect to the allegations of Jordanian citizenship by plaintiffs Nabiha Abu–Zeineh, Nuwarah Mash'al, Jihad Abu–Ramouz, Abed Safi, Ahmad Essawi and Nofan El–Khader (the West Bank plaintiffs), whose decedents resided in the West Bank and the area in and around Jerusalem, the State Department was asked the following question and gave the following answer:

2. Whether the Executive Branch of the United States government continued to consider the Palestinian residents of the West Bank to be Jordanian citizens after King Hussein's July 31, 1988 proclamation, which unilaterally severed Jordan's legal and administrative ties with those Palestinians?

Answer: The Department has not found any indication that the Executive Branch has had occasion to consider whether the Palestinian residents of the West Bank are citizens of Jordan, either before or after July 31, 1988.

(11/21/94 Letter of Conrad K. Harper).

Obviously, this response provides little guidance to the court as to whether the West

Bank plaintiffs were citizens of Jordan when the complaint was filed in this action. In their motion to dismiss, defendants maintain that the West Bank plaintiffs have failed to carry their burden of establishing that they are "citizens or subjects" of Jordan. (Defendants' Memorandum, p. 15). After further consideration, the court agrees.

Initially, the court wants to clarify an issue raised by the West Bank plaintiffs concerning the burden of proof on the issue of Jordanian citizenship. In response to defendants' motion to dismiss, the West Bank plaintiffs assert that the United States courts accord a presumption of continuing citizenship as against statelessness;[6] that this presumption dictates that the West Bank plaintiffs be considered Jordanian citizens for purposes of Title 28, United States Code, Section 1332(a)(2); that the West Bank plaintiffs have established that they were at one point Jordanian citizens; and that defendants have failed to meet their burden of establishing that the West Bank plaintiffs are no longer Jordanian citizens. (Plaintiffs' Memorandum, p. 18).

■ The court does not agree with the assertion that in a situation such as this one, where it is asserted that citizenship has been revoked, the burden of proof shifts to defendants to establish that the West Bank plaintiffs are not Jordanian citizens. In the court's view, any presumption of "continuing citizenship" would merely shift the burden of production to defendants, and plaintiffs would continue to have the burden of proving their citizenship for purposes of diversity jurisdiction. In the present case, it is clear that defendants successfully rebutted any presumption of "continuing citizenship" through the Declaration of Mr. Sofaer. (Defendants' Memorandum, Exh. B).

As noted above, in support of their motion to dismiss, defendants submitted the Declaration of Abraham D. Sofaer.[7] In his Declaration, Mr. Sofaer states, *inter alia*, that, prior to July 31, 1988, Palestinian residents

---

6. In support of this assertion, the West Bank plaintiffs cited a decision from the United States District Court for the Eastern District of New York. However, the cite was incorrect and the court could not find the proper cite.

7. Mr. Sofaer is currently a partner in the law firm of Hughes Hubbard & Reed. Mr. Sofaer was Legal Advisor to the United States Department of State from 1985–90; he was a judge on the United States District Court for the Southern

of the Israeli-occupied West Bank were considered by Jordan to be Jordanian citizens; that, on July 31, 1988, Jordan's King Hussein issued a proclamation unilaterally severing all of Jordan's legal and administrative ties with the West Bank; that, on August 20, 1988, Jordan's Prime Minister, Zaid Rifai, issued a statement, which took effect immediately upon issuance, providing that any person residing in the West Bank prior to July 31, 1988, shall be considered by Jordan to be a Palestinian citizen, rather than a Jordanian citizenship; that, on numerous occasions since 1988, the Jordanian High Court of Justice has considered the status of persons residing in the West Bank and the areas in and around Jerusalem; and that the decisions of the High Court of Justice make clear that Jordan considers such persons to be Palestinian citizens and not Jordanian citizens.[8] (Defendants' Memorandum, Exh. B).

The West Bank plaintiffs do not dispute these assertions. (Plaintiffs' Memorandum, p. 15). Rather, they argue, correctly, that Jordanian Citizenship Law has never been amended to reflect Jordan's severing of legal and administrative ties with the West Bank by King Hussein's July 31, 1988 proclamation.[9] As a result, the West Bank plaintiffs further argue: "In the face of the plaintiffs' ambiguous status under Jordanian law, the U.S. presumption against denationalization and statelessness requires that they be afforded alienage jurisdiction." (Plaintiffs' Memorandum, p. 18).

The court agrees with defendants that evidence of the failure of the Jordanian Citizen-

ship Law to be amended in accordance with King Hussein's proclamation and the subsequent statement of Jordan's Prime Minister is insufficient to establish that the West Bank plaintiffs are Jordanian citizens "in the eyes of the Jordanian government."[10] The court also agrees with defendants that the opinions of the Jordanian High Court of Justice make it clear that the Jordanian judiciary views the July 31, 1988 proclamation as a sovereign act, which the courts of Jordan are not empowered to review. As defendants correctly point out, if "the Jordanian High Court of Justice will not declare that the King's proclamation does not have the force of law, it is certainly not for this Court to do so." (Defendants' Reply Brief, p. 6). Under the circumstances, defendants' motion to dismiss will be granted.

District of New York from 1979–85; and he was a professor of law at the Columbia University School of Law from 1969–79.

8. Mr. Sofaer also explains in detail the reasons underlying his opinion that the evidence produced by the West Bank plaintiffs to establish Jordanian citizenship, such as Jordanian passports and family registration documents, is insufficient to establish Jordanian citizenship. (Exhibit B to Memorandum in Support of Motion to Dismiss).

9. See Declarations of Raja Shehadeh and Taher Masri. (Plaintiffs' Memorandum, Exhs. A and B).

10. With respect to the Declaration of Fayez Tarawneh, Ambassador of the Hashemite Kingdom of Jordan, which was submitted by the West

Bank plaintiffs after the parties' memoranda of law had been filed, the court concludes that the declaration offers no support for the allegations of Jordanian citizenship by the West Bank plaintiffs. Ambassador Tarawneh merely indicates that the Jordanian government issues two-year passports to residents of the West Bank, and that a holder of a Jordanian passport is eligible to receive the full services afforded to Jordanians by Jordanian Embassies and Consulates abroad. In, light of the ties still existing between the Kingdom of Jordan and the people of the West Bank and Jerusalem, Ambassador Tarawneh, on behalf of the Jordanian government, urges the United States federal courts to give the same access to the residents of the West Bank and Jerusalem as the courts would give to citizens of any foreign state.